IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD C. MILLER, CYNTHIA MILLER, RICHARD C. MILLER, DDS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> REED MEMORIAL LIBRARY, CITY OF RAVENNA, <br><br> Defendants. | CASE NO. 5:25-CV-00233-CEH <br><br> CARMEN E. HENDERSON <br> UNITED STATES MAGISTRATE JUDGE <br><br><br> **MEMORANDUM OF OPINION AND ORDER** |

Pending are Defendants Reed Memorial Library (the "Library") and City of Ravenna's (the "City") respective Motions for Partial Judgment on the Pleadings. (collectively, "Defendants") (ECF Nos. 15, 17.). Plaintiffs, Richard C. Miller, Cynthia Miller, and Richard C. Miller, DDS, Inc. (collectively, "Plaintiffs") filed a Motion in Opposition to Defendants' Partial Motions for Judgment on the Pleadings (ECF. No. 19.). Defendants each filed replies in support of their Motions for Partial Judgment on the Pleadings. (ECF. Nos. 20, 21).

I. **Background**

In their Complaint, Plaintiffs, Dr. Richard C. Miller, Cynthia Miller, the owners of commercial property at 309 E Main Street, Ravenna, Ohio, and Richard C. Miller, DDS, Inc. ("Miller Dentistry"), assert claims against Reed Memorial Library and the City of Ravenna under (1) 42 U.S.C. § 1983 for a taking (2) violation of R.C. § 713.13 and (3) private nuisance. (ECF. No. 1-1, at ¶ 1). In 1978, the Millers began operating Miller Dentistry on the property. *Id.* Plaintiffs allege the property has two second floor rental apartments and a commercial office on the first floor. *Id.* Plaintiffs also represent that the property has rear parking with access to a

1

public right of way located on Locust Lane. *Id.* Furthermore, Plaintiffs represent that Miller Dentistry has four employees and generally services three patients at a time. *Id.* ¶ 2.

The City of Ravenna is a municipal corporation that owns property adjacent to Plaintiffs, located to the west and north. *Id.* at ¶ 3. The City leases this property to the Library. *Id.* The Library is a school district public library created pursuant to R.C. § 3375.15. *Id.* at ¶ 4. The Library offers free services to the public and provides free parking in its surface lot. (ECF. No. 20, at 4). In 2004, the Library began reconstructing the property North of Plaintiffs' parcel into a parking lot. *Id.* at ¶ 8.

Plaintiffs alleged that as a component of the renovation approval process, the Ravenna Planning Commission should have granted a conditional use permit to use the R-4 zoned properties, North of the Miller Property for a public library parking lot. (ECF. No. 1-1, at ¶ 13). Plaintiffs also alleged that on June 13, 2023, the Library submitted a site plan to the Ravenna Planning Commission that, "alter[ed] the Library's parking lot by constructing a curve to block vehicle access between Locust Lane and the parking lot…[t]he site plan also proposed adding a new parking lot entrance on Locust Lane, positioned less than 20 feet from the intersection of Locust Lane and Elm Street." *Id.* at ¶ 15.

Plaintiffs claim that the site plan included, "constructing a pavilion for children's programming and a circular gravel playground for individuals served by Portage County MRDD, both structures positioned less than 10 feet from Locust Lane." *Id.* at ¶ 16. Plaintiffs also allege that the Library Parking Lot's modifications violated Ravenna Ordinances, including, No. 1274.04(b) requiring all structures to maintain a minimum setback of 25 feet from all property lines and that the City, "[d]id not treat the Library's new parking lot site plan as a request for a new conditional use permit." *Id.* at ¶¶ 16-17.

Following alterations to the parking lot, Plaintiffs alleged that the curb improvement and construction of the Library pavilion and MRDD playground within 10 feet of the property line, created a private nuisance. *Id.* at ¶¶ 48-49. Specifically,

> [t]he combination of acts disrupts the preexisting Miller Dentistry business because children and mentally disabled people are at high risk of traversing Locust Lane, which is the Miller Property's only ingress and egress route. This creates a dangerous situation when the Miller Property must take delivery of nitrous and oxide tanks from a delivery truck, which can only back out of Locust Lane now. As a direct result, Miller building tenants and Miller Dentistry must forgo the use of its rear parking lot when it takes deliveries to avoid causing motor vehicle accidents and pedestrian collisions. The Library's recent actions caused the Miller's to lose their quiet enjoyment and use of their rear parking lot periodically throughout the month.

*Id.* at ¶¶ 48-49.

Plaintiffs seek injunctive relief and monetary damages. (ECF. No. 1-1, at 19). This Court grants Defendants' Motions for Partial Judgment on the pleadings for the reasons discussed below.

## II.     Standard of Review

The procedural standard for determining a judgment on the pleadings under Fed. R. Civ. P. 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Daily Services, LLC v. Valentino*, 756 F.3d 893, 898 (6th Cir. 2014) (citing *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The

3

factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities)

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id.* at 570. The factual allegations in the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). Dismissal of the action is proper if Plaintiff "undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Progressive Northern Ins. Co. v. City of Rocky River, No.* 1:18CV0524, 2019 WL 5394206, at *3 (N.D. Ohio Aug. 16, 2019) (internal quotation marks and citations omitted).

### III. Law and Analysis

#### A. Governmental Immunity

Under Ohio law, the common-law concept of sovereign immunity is codified in R.C. Chapter 2744. Ohio Rev. Code Ann. § 2744 (West 2007); *see Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105. Under R.C. § 2744.02(A)(1), the Political Subdivision Tort Liability Act, political subdivisions of Ohio are generally immune from liability for tort claims connected with a governmental or proprietary function. Ohio Rev. Code Ann. § 2744.02(A)(1) (West 2007). Moreover, under R.C. § 2744.01(F), a "political subdivision" includes "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Ohio Rev. Code Ann. § 2744.01(F) (West 2016).

Further, "[w]hether a political subdivision or its employee may invoke statutory immunity under R.C. Chapter 2744 generally presents a question of law." *Hoffman v. Gallia Cty.*

4

*Sheriff's Office*, 2017-Ohio-9192, 103 N.E.3d 1, at ¶ 38. In many cases, the wide-ranging governmental immunity in R.C. Chapter 2744 provides a complete defense to a negligence cause of action. *Mason v. Bristol Local Sch. Dist. Bd. of Educ.*, 2006-Ohio-5174, at ¶ 24. (citing *Turner v. Central Local School Dist.* (1999), 85 Ohio St.3d 95, 98, 706 N.E.2d 1261); *see also Sabulsky v. Trumbull Cty.,* 11th Dist. No. 2001–T–0084, 2002–Ohio–7275, at ¶ 11 ("R.C. Chapter 2744 provides nearly absolute immunity to political subdivisions in order to limit their exposure to money damages."). However, "[t]he immunity afforded a political subdivision in R.C. § 2744.02(A)(1) is not absolute[.]" *Cater v. City of Cleveland*, 1998-Ohio-421, 83 Ohio St. 3d 24, 697 N.E.2d 610 at *28 (citing *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 679 N.E.2d 1109).

**B. Three Step Analysis for Determining Immunity under R.C. § 2744.02**

The Supreme Court of Ohio established a three-tiered analysis to determine whether a political subdivision is immune from tort liability. *See Mason*, 2006-Ohio-5174, at ¶ 25. The first tier establishes whether a political subdivision is immune from tort liability under R.C. § 2744.02(A)(1). *Id.* More specifically, R.C. § 2744.02(A)(1) provides a broad grant of governmental immunity to political subdivisions, "[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omissions of the political subdivision or an employee of political subdivision in connection with a government or proprietary function." Ohio Rev. Code Ann. § 2744.02(A)(1) (West 2007).

The second tier in the immunity analysis, establishes whether exceptions enumerated under R.C. § 2744.02(B) strip the political subdivision of immunity. *Id.* at § 2744.02(B). Under express conditions, R.C. § 2744.02(B) removes the general statutory presumption of immunity for political subdivisions. *Id.* One condition, detailed in R.C. § 2744.02(B)(2), imposes liability

5

upon political subdivisions for the negligent acts of their employees when such employees are performing proprietary functions. *Id.* at § 2744.02(B)(2). A second condition, R.C. § 2744.02(B)(4), provides that a political subdivision will be liable for the negligent performance of governmental functions by employees which occurs as a result of physical defects within or on the grounds of the buildings used to carry out those functions. *Id.* at § 2744.02(B)(4).

Finally, under the third tier of immunity analysis, even if one of the R.C. § 2744.02(B) exceptions apply, a political subdivision may still have a defense under R.C. § 2744.03 and regain immunity. *See Mason*, 2006-Ohio-5174 at ¶ 25; *Hacker v. Cincinnati*, 130 Ohio App. 3d 764, 721 N.E.2d 416 (1998); *Hubbard v. Canton City School Bd. of Edn.,* 97 Ohio St.3d 451, 780 N.E.2d 543, 2002–Ohio–6718, at ¶ 10–12.

Applying this framework, pursuant to the first tier of immunity analysis, R.C. § 2744.02(A)(1) immunity applies to both Defendants. The parties do not contest that the library is a school district public library, formed under R.C. § 3375.15, and is therefore a political subdivision. Ohio Rev. Code Ann. § 3375.15 (West 2012) (ECF. No. 1-1, at ¶ 4) (ECF. No. Doc. 15 at 4). Similarly, the parties do not contest that the City of Ravenna is a municipal corporation and is therefore a political subdivision. Ohio Rev. Code Ann. § 2744.01(F) (West 2016). (ECF. No. 1-1 at ¶ 3) (ECF. No. Doc. 17 at 4). Therefore, Plaintiffs do not contest the general grant of immunity under R.C. § 2744.02(A)(1). (ECF. No. 19 at 6).

Pursuant to the second tier of immunity analysis, Plaintiffs contend that the Library and the City of Ravenna's operation and ownership of the Library parking lot is a proprietary function removing governmental immunity under R.C. § 2744.02(B). *See* Ohio Rev. Code Ann. § 2744.02(B) (West 2007) (ECF. No. 15 at 4) (ECF. No. Doc. 17 at 4) (ECF. No. 19 at 6). This Court does not find Plaintiffs' arguments persuasive for the reasons discussed below.

6

    a.  **Private Nuisance Claims are not an Exception to Immunity under R.C. § 2744.02(B)(2) and (B)(4).**

Under Count Three of the Complaint, Plaintiffs claim that when the Library constructed its curb improvement project including, a pavilion and playground within ten feet of its property line, this created a private nuisance resulting in Plaintiffs' loss of quiet enjoyment of their property and use of their rear parking lot throughout the month. (ECF. No. Doc. 1-1, Compl. ¶¶ 48-49). Principally, "[n]uisance" is a term used to designate "'the wrongful invasion of a legal right or interest.'" *Battelle Mem. Inst. v. Big Darby Creek Shooting Range,* 192 Ohio App.3d 287, 2011-Ohio-793, 948 N.E.2d 1019, at ¶ 18 (quoting *Barnett v. Carr ex rel. Estate of Carr* (Sept. 17, 2001) Butler App. No. CA2000–11–219, 2001 WL 1078980, at *10).

Moreover, a "private nuisance" is a nontrespassory invasion of another's interest in the private use and enjoyment of land. *Id.* at ¶ 19. In order for a private nuisance to be actionable, the invasion must be either (a) intentional and unreasonable or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct. *Id.* Additionally, the "injury must be real, material, and substantial." *Banford v. Aldrich Chem. Co.*, 2010-Ohio-2470, 126 Ohio St.3d 210 at ¶ 17. The present private nuisance action is grounded in the Library's alleged negligence in its renovation project removing governmental immunity under R.C. § 2744.02(B). Ohio Rev. Code Ann. § 2744.02(B) (West 2007) (ECF. No. Doc. 1-1, Compl. ¶¶ 48-49).

While negligence is a key element of proprietary function liability under R.C. § 2744.02(B)(2), the statute does not explicitly include private nuisance claims within its exceptions to immunity. Ohio Rev. Code Ann. § 2744.02(B) (West 2007). The Supreme Court of Ohio's long-standing rule regarding statutory interpretation includes a narrow construction of statutes, "where the language of a statute is clear and unambiguous, it is the duty of the court to

7

enforce the statute as written, making neither additions to the statute nor subtractions therefrom." *Hubbard*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 14. Following this framework, the legislative intent behind R.C. § 2744 and the Court of Appeals of Ohio's statutory interpretation appear to limit liability for political subdivisions from nuisance claims.

For example, in *Vonderhaar v. Cincinnati*, the Court of Appeals of Ohio for the First District declined to extend R.C. § 2744.02 to a public nuisance claim where the plaintiff fell into a hole that was four feet by five feet wide and 48 inches deep, dug by the Greater Cincinnati Water Works, while repairing a water main. 2010-Ohio-6289, 191 Ohio App. 3d 229, 237, 945 N.E.2d 603, at ¶ 31. The court held that R.C. § 2744.02 no longer imposes liability on a municipality for nuisance. *Vonderhaar*, 2010-Ohio-6289, at ¶ 31 ("As a threshold matter, the tort liability of the city as a political subdivision was limited by R.C. [§] 2744.02, and that statute no longer imposes liability against a political subdivision for 'nuisance'"); *see also Barge v. St. Bernard*, 2011-Ohio-3573, 195 Ohio App. 3d 28, 958 N.E.2d 636. (extending the *Vonderhaar* rule to a nuisance claim for damages attributed to a former landfill property owned by the municipality).

Furthermore, R.C. § 2744.02(B)(3) previously provided an express exception to immunity for injuries caused by a political subdivision's failure to keep public roads free from nuisance.[1] However, this provision was amended, and its scope narrowed, removing nuisance liability as a basis for claims against political subdivisions. *See, e.g.,* Ohio Rev. Code Ann. § 2744.02(B)(3) (West 2007) (replacing the phrase free from "nuisance" with "other negligent failure to remove obstructions from public roads"); *see also Sherwin-Williams Co. v. Dayton*

---

[1] The previous R.C. § 2744.02(B)(3) expressly removed governmental immunity for nuisance actions, "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep * * * public grounds within the political subdivision open, in repair, and free from *nuisance*." S.B. 221, 145 Ohio Laws, Part II, at 2216 (emphasis added).

*Freight Lines*, Inc., 112 Ohio St.3d 52, at ¶ 11-12 (2006). In sum, the General Assembly removed the "nuisance" language from the R.C. § 2744.02(B) exceptions and the Court of Appeals of Ohio for the First District declined to extend R.C. § 2744.02(B) exception to nuisance claims following a plain reading of the statute. *Vonderhaar*, 2010-Ohio-6289, at ¶ 31; *see e.g.* S.B. 221, 145 Ohio Laws, Part II, at 2216. Thus, this Court declines to extend or apply nuisance claims to R.C. § 2744.02(B) in opposition to the statutory intent of the General Assembly and the interpretation of the statute by Court of Appeals of Ohio.

### b. Defendants do not Perform Proprietary Functions under R.C. § 2744.02(B)(2) and (B)(4).

As discussed above, the application of governmental immunity under R.C. § 2744.02(B)(2) and (B)(4), hinges upon the Court's characterization of the political subdivision's conduct as a "governmental function" or a "proprietary function." Ohio Rev. Code Ann. § 2744.02(B) (West 2007). For the reasons discussed below, Defendants both performed governmental functions in their respective ownership, operation, and renovation of the Library parking lot.

R.C. § 2744.01(C)(1) defines a "governmental function" as a function of a political subdivision that is specified in section (C)(2) or satisfies certain criteria, such as being imposed upon the state as an obligation of sovereignty, performed for the common good of all citizens, or promoting public peace, health, safety, or welfare. *Id.* at § 2744.01(C)(1). Furthermore, R.C. § 2744.01(d) identifies "the provision of a free public library system" as a governmental function. *See Souther v. Preble Cty. Libr., W. Elkton Branch*, 2006-Ohio-1893. In this case, the Library offers free services to the public and is classified as a school district public library. (ECF. No. 1-1, ¶¶ 4-6). The Library was dedicated on June 2, 1924 and serves the Portage County, Ohio area.

*Id.* Thus, the Library serves the greater public in an essential government function under both R.C. § 2744.01(C)(1), and R.C. § 2744.01(d).

Plaintiffs contend that Defendant's lack of adherence to proper permit procedures, specifically the City's acquiesce in the Library's failure to seek a conditional use permit, are proprietary functions that led to the negligent construction of the road, playground, and pavilion. (ECF. No. 19, at 6-7). Therefore, Plaintiffs contend that Defendants are not entitled to immunity under R.C. § 2744.02(A)(1). Ohio Rev. Code Ann. § 2744.01(C)(2)(p) (West 2016) (ECF. No. 1-1, at ¶ 49). However under R.C. § 2744.01(C)(2)(p), "[t]he *provision or nonprovision* of inspection services of all types, including, but not limited to, inspections in connection with building, *zoning*, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures" are expressly enumerated governmental functions. Ohio Rev. Code Ann. § 2744.01(C)(2)(p) (West 2016) (emphasis added).

In this case, the City of Ravenna performed governmental functions through its enforcement of zoning laws in the completion of the Library's renovation projects. (ECF. No. 21, at 3). Zoning is expressly classified as a government function under Ohio law and therefore removing governmental immunity under R.C. § 2744.02(B)(2) is erroneous. Therefore, the City of Ravenna's zoning scheme and conduct in the Library's renovation is expressly provided in R.C. § 2744.01 and is a government function.

### c. The Proprietary-Function Exception to Immunity under R.C. § 2744.02(B)(2) does not apply.

Plaintiffs contend that pursuant to R.C. § 2744.02(B)(2), Defendants are liable for "the negligent performance of employees with respect to *proprietary functions* of a political subdivision" as their ownership and operation of the Library parking lot is similar to that of a business entity. Ohio Rev. Code Ann. § 2744.02(B) (West 2007) (emphasis added) (ECF. No. 19 at 6). A "proprietary function" is defined in R.C. § 2744.01(G)(2) as any function not described in the statutory provision defining governmental functions and that involves activities that are customarily engaged in by nongovernmental persons. Ohio Rev. Code Ann. § 2744.01(G)(2) (West 2016). Furthermore, proprietary functions include the operation and control of an off-street parking facility. *Id.* at R.C. § 2744.01(G)(2)(e).

Ohio appellate and municipal courts have held that parking lots owned by political subdivisions, maintained near commercial business centers or operated for profit, are proprietary functions as they involve activities akin to private business operations. *See Cutnaw v. City of Columbus*, 107 Ohio App. 413, 157 N.E.2d 373, 597-600 (1958); *Bounds v. Marc Glassman, Inc.*, 2008-Ohio-5989, at ¶ 14; *Meyer v. Dayton*, 2016-Ohio-8080, 74 N.E.3d 921, at ¶ 32.

In *Cutnaw v. City of Columbus*, the operation of a city-owned parking garage that included, "[a] fee… for parking…receipts [that] are taken in yearly, and that the garage is run as a business" was characterized as a proprietary function "even though it served a public purpose, because it involved activities akin to private business operations." *Cutnaw*, 107 Ohio App. 413, at 601. The *Cutnaw* court relied upon the reasoning in *Gorsuch v. City of Spring-field,* "[if] the function being exercised is proprietary and in pursuit of private and corporate duties, for the particular benefit of the corporation and its inhabitants, as distinguished from those things in

11

which the whole state has an interest, the city is liable in tort." *Cutnaw*, 107 Ohio App. 413, at 600-01 (quoting *Gorsuch v. City of Spring-field*, Ohio App., 61 N.E.2d 898, 43 Ohio Law Abst. 83, 31.)

Subsequently, in *Bounds*, the court held that the maintenance of a city-owned parking lot adjacent to a shopping center was a proprietary function under R.C. § 2744.01(G)(2)(e). *Bounds*, 2008-Ohio-5989, at ¶ 14. Furthermore, in *Meyer*, the Court of Appeals of Ohio for the Second District, held that a city owned airport parking lot, operated by Dayton Airport Parking, LLC, was a proprietary function akin to a business. *Meyer*, 2016-Ohio-8080, at ¶ 32. Thus, payment or adjacent business operations of a political subdivision owned parking lot may be determinative of its classification of a proprietary function or government function.

In this case, the Library offers free services to the public and provides free parking in its surface lot. (ECF. No. 20, at 4). Unlike the city-owned parking garage in *Cutnaw*, the Airport parking lot in *Meyer*, and the parking lot adjacent to a commercial shopping center in *Bounds*, the Library parking lot is not used to facilitate commercial activity and does not require the payment of fees in order to access the lot. *See Cutnaw*, 107 Ohio App. 413, at 601; *Meyer*, 2016-Ohio-8080, at ¶ 32; *Bounds*, 2008-Ohio-5989, at ¶ 14. In contrast, the lot is a free surface lot adjacent to the Library, accruing no capital, thus not serving a proprietary function akin to a business. (ECF. No. 20, at 4). As a result, the Library parking lot is not a proprietary function of either the Library or the City.

C. **The Governmental Building Exception under R.C. § 2744.02(B)(4) Does Not Apply.**

Alternatively, Plaintiffs contend that Defendants are not entitled to governmental immunity under R.C. § 2744.02(B)(4) due to physical defects including, "[1] the parking lot's design interferes with Locust Lane traffic, [2] the pavilion and playground are too close to the property

12

line and [3] the lot's entrance is too close to an intersection." Ohio Rev. Code Ann. § 2744.02(B)(4) (West 2007) (ECF. No. 19 at 8-9). Pursuant to R.C. § 2744.02(B)(4), political subdivisions are liable for injury, death, or loss to persons or property caused by the negligence of their employees when such negligence occurs within or on the grounds of buildings used in connection with governmental functions and is due to physical defects within or on those grounds. Ohio Rev. Code Ann. § 2744.02(B)(4) (West 2007).

Thus, R.C. 2744.02(B)(4) removes "the general immunity afforded [to] political subdivisions engaged in a governmental activity only if an injury is: (1) caused by employee negligence, (2) on the grounds or in buildings used in connection [with] that governmental activity, and (3) due to physical defects on or within those grounds or buildings." *Hamrick v. Bryan City Sch. Dist.*, 2011-Ohio-2572, at ¶ 25. Though the term "physical defect" is not defined in R.C. Chapter 2744, it is narrowly tailored to address physical defects that exist when there is "a perceivable imperfection that diminishes the worth or utility of the object at issue." *See Hamrick*, 2011-Ohio-2572, at ¶ 28; *Gibbs v. Columbus Metro. Hous. Auth.,* 10th Dist. Franklin No. 11AP–711, 2012-Ohio-2271, 2012 WL 1852086, at ¶ 13; *Duncan v. Cuyahoga Community College*, 2012-Ohio-1949, 970 N.E.2d 1092, at ¶ 26.

Ohio courts have explicitly rejected the notion that an alleged negligent design, by itself, qualifies as a "physical defect" under R.C. § 2744.02 (B)(4). *See, e.g.*, *Diaz v. Cuyahoga Metro. Housing Auth.*, No. 92907, 2010-Ohio-13, 2010 WL 27868, at ¶ 13 (denying motion for judgment on the pleadings where the plaintiff's complaint alleged that defect in window constituted physical defect and that political subdivision failed to properly maintain premises resulting in window striking plaintiff's daughter); *Leasure v. Adena Local School Dist.*, 2012-Ohio-3071, 973 N.E.2d 810 (finding physical defect exception to immunity of R.C.

13

2744.02(B)(4) applicable where gymnasium bleachers not properly extended and in a locked position when set up).

In this case, Plaintiffs describe alleged negligent designs and construction protocols that do not rise to the level of "physical defects" under R.C. § 2744.02 (B)(4). The parties do not contest that the Library parking lot, playground, and pavilion do not have visible defects or damage. (ECF. No. 1-1, at ¶¶ 48-49). The parties do not contest that the Library parking lot was constructed as intended and operates as intended. *Id.* Nor do Plaintiffs contend that the Library or the City of Ravenna failed to maintain the premises as constructed. *Id.* Thus, a "physical defect" was not established and R.C. § 2744.02 (B)(4) does not remove immunity from Defendants. Ohio Rev. Code Ann. § 2744.02(B)(4) (West 2007).

In sum, Defendants are entitled to political subdivision immunity pursuant to R.C. § 2744.02(A)(1) as the none of the exceptions established in R.C. § 2744.02(B) are met. First, Plaintiffs' private nuisance claim is incongruent with the statutory intent of the General Assembly as well as the enumerated exceptions to political subdivision immunity in R.C. § 2744.02(B). Ohio Rev. Code Ann. § 2744.02(B) (West 2007). Moreover, R.C. § 2744.02(B)(2) is inapplicable, as Defendants' conduct constitutes governmental functions. *Id.* at § 2744.02(B)(2). Finally, R.C. § 2744.02(B)(4) is inapplicable as Plaintiff did not plead a cognizable "physical defect." *Id.* at § 2744.02(B)(4).

## IV. Conclusion

Defendants Reed Memorial Library and City of Ravenna's Motions for Partial Judgment on the Pleadings (ECF Nos. 15, 17) are granted.

**IT IS SO ORDERED.**

Dated: September 10, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE